All right, the next matter for argument is N. Ray G. I. Holdings, Inc. This is a new incarnation of this litigation. Like the many heads of HYDRA, G. I. Holdings Good morning, may it please the court. My name is Martin Beanstock of the law firm Wild Oxlamanches. We represent G. I. Holdings, Inc. as Chapter 11 did our obsession. I keep mistakenly calling it G. I. Holdings, and we did that the last time I had a case involving G. I. Holdings. I'm sorry. The issue is whether District Judge Bassler below erred in determining that Bankruptcy Judge Gamergill's denial of our estimation method motion, by order dated July 14, 2005, was not a final order. And that ruling went entirely to your motion, and she ruled only in part on the other motion. That's correct. And let me just put on the G. I. confronts over 150,000 asbestos claims. This is undisputed. It makes a difference in this area of mass torts. It makes a gigantic difference whether, when you negotiate with each claimant, the claimant can say, when you say, by the way, you have no evidence that you were exposed to G. I.'s product, you have no evidence of injury, you were paid in three other bankruptcies. If the claimant can, or the claimant's attorney, can look you in the eye and say, fine, you'll prove that in a jury trial, then obviously the compromise of that claim will have to take into account the substantial time and expense of a jury trial. Whereas... Does that include punitive damages? Well, in bankruptcy, we submit it should not. Outside bankruptcy, depending on how things are resolved, it could. It makes, therefore, a gigantic difference if we're dealing with each claimant, no matter how frivolous the claim, having the threat of the time and expense of a jury trial versus whether we're dealing with what Congress put into the Bankruptcy Code for obvious reasons to minimize time and expense of claim resolutions. And that is the power to estimate personal injury and wrongful death claims for purposes of distribution. Don't both estimation proposals require an aggregation of X number of individual claims, regardless of how those claims are motion was a process to liquidate the amounts for distribution of each individual present claim. I understand it didn't include future claims. Based on the matrix. It can't do the futures, obviously, because you wouldn't know what to plug into the matrix, age, occupation, disease, et cetera. And we were doing it, as I just mentioned, by the parameters of the disease and of the person, et cetera. The logical determinants of what the claim want to be. The Asbestos Committee asked for an aggregate estimation of all the present pending asbestos claims and all the likely future claims based in their view on the history of paying these claims in the tort system prior to bankruptcy. Isn't your proposal really a liquidation proposal as well as or rather than an estimation proposal? Your Honor, with the that distinction between estimation and liquidation, I think is based on a misunderstanding. So let me try to clarify the bankruptcy codes use of the word estimation and its use in the Federal Rules of Civil Procedure. In the Federal Rules of Civil Procedure, the definition of estimation is that the amount of a claim is going to be determined, and you can call that a liquidation, but it's going to be determined by less than the normal process in the Federal Rules of Civil Procedure of complaint, discovery, trial, et cetera. And therefore, they use the term estimate because it may not be as exact as you would get from a full trial soup to nuts. But it's not any, it's, it's determinative of the exact amount the claimant is entitled to in the bankruptcy. In other words, when 157B2B, this is the critical point, when it says you can estimate for purposes of distribution, it means you're coming up with an exact amount of a claim. And that might be what your Honor means by, isn't it effectively a liquidation? It is. It's a liquidation by a process less than the soup to nuts Federal Rules of Civil Procedure. And it's... Does the Congress have the power to say no right to jury trial? It certainly does when the Supreme Court... But we do with the Constitution. Your Honor, I'm glad you raised it. The United States Supreme Court, first in Ben V. Barber, in our brief, then in Cashen v. Landy, then in Grand Financiera, then in Langenkamp v. Culp, four cases have said, when you are making a claim against a bankruptcy estate, you're in equity and there is no right to jury trial. What happened as recently as 1994, Congress passed Section 1411 of Title 28. And Section 1411 said, for personal injury and wrongful death claims, even though you're in bankruptcy, and the Supreme Court has said there's no right to jury trial in an equity case, you may still have your right to jury trial if you have one outside of bankruptcy. When Congress passed 1411, it simultaneously enacted Section 157b2b of Title 28 that talked about estimating personal injury and wrongful death claims. And it defines them in 157b2b as non-core, which means the district court issues the ultimately to the merits, which is a quantum leap ahead at least for me, because what we're primarily, I use that term simply to signal first, what we're first interested in here is the jurisdictional question. And that has been battled out, and we all know that this is unusual, but it's not consistent with or applied across the board by all the circuits in the country. We have a very flexible approach and a four-part test that we use. And I am curious as to how you meet the first of that four-part test. And we've said in at least one of our cases that that's the most important factor. I think you've said it a few times. In the four-part test. I know we said it in, well, at least once, maybe a few times. So what's the impact on the assets of the bankruptcy estate here if we don't reach the merits of this question now? The impact is hundreds of millions of dollars of time and expense. Going back to the first thing I said, if each of 150,000 plus claimants can demand a jury trial, it is true, you're not going to actually have 100,000. But how is the bankruptcy estate impacted financially? How are the assets impacted by our declining to reach it now as opposed to on appeal after a plan is finally approved? Okay. Two ways. First, the allocation of the assets as between asbestos claimants, non-asbestos claimants and equity can change drastically depending on how this issue comes out. That is why District Judge Bassler conceded, admitted at page 20 of the formulation process will have to be redone because the allocation of the estate... He wasn't all that troubled by that though, was he? That was an error, Your Honor. He should. In fact, he explicitly said that he weighed that against, as I recall, some of the concerns about expense to the court system and the delay in expense attendant to piecemeal appeals and decided that it wasn't worth it. And he did that by confusing the denial of our motion with the court's continuation of the committee's motion, which is looking for the aggregate asbestos liability of the estate. The second way in which it affects the assets, Your Honor, is it sets in place a hard and fast expense. It's expensive. The bankruptcy judge acknowledged in her decision, she said this could even be the death knell of the reorganization if this expense and the time that goes with it is a factor. But she hasn't said the precise estimation procedure and methodology yet. No, but we know one thing now. We know one thing now. When it comes to the method of determining each asbestos claim, she is on record that they each have to have the jury trial option. And my concern with that, Your Honor, is because that'll be some 524G trust and they'll take care of it and argue in the back room after confirmation. But even then, even if they're right, it makes a big difference in how the money is allocated if each claimant can demand the jury trial right. And I don't think anyone quarrels with that. That's just logical and undisputed. So I think the most ultimately, though, with the right to jury trial issue, did it? Not at all. And that's why I want to mention Judge Posner's decision in the Seventh Circuit. So even if even if we found we had jurisdiction, and I'm skeptical about that, but even if we found we had jurisdiction, we need to send this back to the district court for a resolution of that issue. You would, unless Your Honors, follow the UAL decision of Judge Posner in the Seventh Circuit. In that case, it was a bankruptcy case. The debtor was dealing with whether it had to assume contracts for large aircraft, and it mistakenly decided to assume several of these contracts, thinking that it didn't owe any money in arrears. It then discovered that it did owe, and it asked the court to get out its commitment to assume the contracts. When it went up on, the district judge dismissed it as a non-final order lack of jurisdiction. So it went up to the Seventh Circuit in the exact posture we are here. And the Seventh Circuit said first it had jurisdiction over the appeal, and then Judge Posner explains that because the decision as to whether the aircraft leases would be in effect or not would have a heavy impact on negotiating and on the Chapter 11 plan. That number one, the appeal was, it was a final order, it should be decided. And number two, he said, I'm not going to send it back down to the district court. I'm going to tell you right now what the answer is. Because it was all briefed as it's briefed before Your Honors. Assume that we decide that we lack jurisdiction. When is the next time that G1 Holdings can validly appeal the jury trial issue? Your Honor, there are only two possibilities. The most likely one is after a plan is confirmed, because at that point, all of the interlocutory orders, if that's what you determine this is, would be folded into the final order on the plan. And there's going to be a huge impact on the assets if we decline jurisdiction and that delay attends? Right. And virtually the balance of the organization case would have to be done over again if Your Honor reverses later. The only other possibility that I can think of is that the, if we went back to Judge Gambardella with this, this probably wouldn't, well, we could go back to her with a new method, but it would still have the jury trial problem and simply try it again. But there's no reason to think we'll get to a different result. Excuse me. Are you suggesting that we should accept jurisdiction and then develop your plan? And so that fact that bankruptcy court say, now this is the way you're going to do it. I'll allow Judge Posner. Your Honor, there are three things Your Honors could do. That's one of them, but I don't think that's what Your Honors will do. I think at a minimum, Your Honors could decide as Judge Posner did, that this is a final order because it finally resolved that our method to determine individual claims is denied. And Your Honor could simply send it down to the district court to say, did the bankruptcy court properly deny it or not? The second thing Your Honors could do would, would be to say, that's only if we determine that these, these are estimation proposals that are totally independent. Right, right. Well, I don't know what Your Honor means by relief. To me, that makes them independent. They both use the word estimation and that's a cause of the, that my adversaries use to say they're both really the same thing, but they just want an aggregate number. We want to know how each individual claim is resolved and we're not asking for an aggregate number. So one thing Your Honors could do is to determine what's a final order and tell the district judge to decide our appeal. The second thing Your Honors could do is not go our entire estimation method, but say it was a final order. You've considered the jury trial issue and you think the bankruptcy judge was right or wrong on that, but the district judge should consider the rest of the estimation method that, that was rejected. Or Your Honor could do what Judge Dowd said, which is go through the whole, the, the whole system, which as I said, I don't think the third circuit is going to do in the first instance before it's reviewed by the district court. Mike, anything? Do you have anything at this point? We're going to have Mr. Benescott back on rebuttal. Any further at this point, Judge Dowd? No, thank you. I, thank you, Your Honor. I forget whether I remembered to ask for three minutes of rebuttal, but I intended to. I, you, we, we both fouled up that way. I did when I signed in, but I forgot to do that. Good morning, Your Honors. May it please the court, Michael Shire. Excuse me, I think the council have divided up their time, 10 minutes for you, Mr. Scheer and five minutes for Mr. Sweat. Is that correct? That's correct, Your Honor. All right. Thank you. I wanted to express our gratitude for, for the court granting us leave to do so. Your Honor, may it please the court, Michael Shire with the law firm of Keating, Muthing, and Kleekamp on behalf of Co-Appellee C. Judson Hamlin, the court appointed legal representative of holders of present and future asbestos-related demands. Your Honors, the portion of my presentation will deal with the finality question, what you termed as being the preliminary issue or the primary issue, understanding the meaning that it's really just a threshold issue. And to properly analyze that question of whether Judge Gambar-Della's order that's subject to, to G-1's appeal is final under the third circuit's finality jurisprudence is applied to bankruptcy requires a proper understanding of the nature of the order that's been brought before you on this appeal. And just as importantly, a proper understanding of the way the parties positioned themselves before Judge Gambar-Della in proceedings that led to entry of the order. And I submit to Your Honors that G-1's characterizations on both counts falls woefully short. G-1 mischaracterizes both of those issues, in our view, badly, leading to a flawed and irrelevant finality analysis focusing on a question that was never presented to the bankruptcy court on a record, and on a record that was never created in the court. What's before Your Honors up here on appeal, what G-1 brings to the court in a provident interlocutory posture is an order of the bankruptcy court that reflects Judge Gambar-Della's exercise of her discretion to choose between competing estimation proposals based upon which proposal. But, Mr. Chair, you've got a limited amount of time, and we understand all of that. But I've, in my question to Mr. Benenstock, pointed to a specific four-part test that this court employs, and then pointed to the first prong of that test, which we've said on occasion is the most important of the factors. Correct. I'm at Your Honor's pleasure. If you'd like me to address that, I'd be happy to. Now, part of that issue, of course, is based upon the nature of the order. Answering that question differs slightly based upon the nature of the order, but let me try to tackle where your interests lie, because that's what's important to me. If you view Judge Gambar-Della's order as you should, as a unitary, organic order that shows between competing estimation proposals, as Judge Bassler wrote, the order has no effect on assets of the estate because no jury trial rights have been triggered, no claims have been disallowed. It was simply a procedural decision on which type of estimation is going to go forward, leaving open exactly how it will be. Before the bankruptcy court, didn't you categorize G-1's proposal as a liquidation proposal? G-1 did propose to estimate by liquidating claims. Didn't you argue at that point that it was actually a proposal to liquidate the claims as opposed to estimating the claims, and for that reason, the bankruptcy court should not adopt that kind of proposal? Well, there's a little bit of a finer point on that. The bankruptcy court, we argued, should not adopt that proposal because the idea behind G-1's proposal was to liquidate claims on a claim-by-claim basis, then to estimate in the aggregate by just adding up the value of all those present claims and then using that as a tool to project out to future claims. Doesn't that kind of proposal, as opposed to your proposal or the committee's proposal on strictly estimating in the aggregate, have an impact on the assets of the estate? No, not in the procedural posture it's in now because all Judge Gambardella held was that she's going to estimate the aggregate amount. So far, we don't know what that amount is. The estate's not being asked to pay any money to anybody. No claims, rights have been affected. So at this point, no. There's absolutely no impact on the bankruptcy estate. The bankruptcy court did say, in estimating the aggregate amount, we're not going to use the matrix that's been proposed by G-1. That much is true. Okay. So if that was properly categorized by you as a liquidation proposal before the bankruptcy court, how can you not categorize it here today as a liquidation proposal that I think certainly has some impact on the assets of the estate? Well, maybe we're quibbling over nomenclature. We could be. We could be. And so let's try to kind of focus in on that. As I understood G-1's and I believe as the record makes clear, they proposed an alternative type of aggregate estimation. Rather than looking at G-1's historical claims database, taking the average value of certain claims and categorizing them, using experts to then project that onto the present claims and ultimately onto the future claims, G-1 sought to look at all the current present claimants, liquidate each of their claims through their matrix, then just take out a calculator, add them all up and figure out what that estimate would be for purposes of determining solvency or insolvency. They never positioned their proposal before the bank's court as one to actually liquidate and then pay claims. Where we were and where they were is they made clear that at this stage that was going to be a tool to both determine solvency, just like the committee's proposal, and it was going to be a tool to project out future claims, just like the committee's proposal. I guess the basis of their argument here is that their matrix or their tool was going to get closer to the bottom line as to what you had to set aside for the asbestos claims than yours. The argument is which of the estimation protocols was going to yield the most accurate result for purposes of this case. Their argument was that their proposal would be a more accurate result more quickly and would allow for less to have to be set aside for the asbestos fund than your proposal, which would be an aggregate estimation. If that's correct, how can that not have some impact on the estate? We're only here looking at jurisdictional questions. It's not a decision on the merits in asking that question. No, I understand, and where you're coming from is maybe at the end of the estimation, when a number is placed on the value of the asbestos claims, that sort of decision might have an impact on the estate, or a decision liquidating a specific claim and requiring the estate to pay a certain amount, or using it to determine the estate's solvency and whether or not equity has an interest might have an economic impact at the estate, but the important pointer is the procedural posture in which G1 is now trying to take this case into this court, and I believe Judge Smith asked the question as to when would that happen. I've asked the question of both sides, and I'm not satisfied with the answers I've gotten. I'm not even satisfied I got an answer at all from you on the impact on the assets of the bankruptcy estate. Well, I am trying to find out from counsel just how the assets are impacted here for purposes of determining our jurisdiction well known, when the district court has yet to squarely rule on the right to a jury trial, when the bankruptcy court has not ruled on any ultimate estimation procedure to employ, when the bankruptcy courts order clearly and explicitly contemplated discovery going forward, and when, as I've seen numerous times in these mega bankruptcies, we have numerous appeals along the way, and we have a jurisprudence as we have that gives us the test that I've laid out. Where is the impact on the assets since both sides seem to agree we're going to have an opportunity on appeal to reach this question again at some point? Allow me to be as direct as I can be. There will be no impact on the assets of the estate through the order that's up here on appeal today. All right. I hope that's as direct as an implication. All of the premises of your question, I also agree with. And even if you accept Mr. Bienenstock's interpretation of what Judge Gambardella did below, and I was going to talk about that, but obviously I won't because the court wants me to focus on something else. Even if the order denied their motion, the fact of potential jury trials down the road, which is not a realistic possibility for numerous reasons, but even at this point, there was no evidence developed below that 150,000 jury, that limiting the claims with jury trials or limiting the claims through their process, no matter, without any evidence of what that costs versus what a jury trial costs and how it would possibly affect the value of claims is absent on the record. So even if you accept Mr. Bienenstock's and G1's characterization of Judge Gambardella's order, you'll see that that likewise has no impact on the estate. And that analysis is very similar to the analysis this court undertook in the Allegheny decision, which also dealt with an appeal of a defendant of an order ruling that it did not have Seventh Amendment jury trial rights. Anything further from Judge Fisher, Judge Dowd? No, nothing further. Thank you. Thank you, Mr. Sweatt. Thank you, Your Honor. May I please, please, the court Trevor Sweatt, for the official committee of asbestos claimants. Endorsing fully the position that the order made by Judge Bassler is correct in that the order made by Judge Gambardella was not final. I would like to pass principally to the issue of what this court should do if it decides that Judge Bassler was wrong on the finality issue. It seems clear to me that Your Honor must remand in that event to Judge Bassler and not accept G1's invitation to reach out for the issue that it has cherry picked from a whole complex of issues presented to Judge Gambardella by its plan. The issue it would like to cherry pick is that of jury trial. There were a whole lot of other reasons why Judge Gambardella rejected its plan and it would be improper, I submit, to accept that cherry picking, pass on that issue when Judge Bassler did not. Essentially, the argument is threefold. First, the statutes and bankruptcy rules have the two-tier appeal process. That's the presumption. There is no precedent in this circuit for allowing G1 to over leap Judge Bassler to reach the merits of the bankruptcy court decision and Judge Posner's decision in the UAL case is inapposite and unpersuasive. Not only did Judge Posner not bother to cite any precedent for why that court was entitled to reach the merits when the real issue was simply finality, but the case is in striking contrast to this one in that here Judge Bassler went off on a motion to dismiss and never received briefs on the merits, whereas Judge Posner in the UAL case says, well, we might as well get to the merits here because they've been fully briefed and it's a legal question. Is G1 Holdings correct when they argue that if we don't resolve the jury trial issue at this juncture, there won't be an opportunity to do it before G1 Holdings proposes and confirms the Chapter 11 plan? Your Honor, I do think that's correct because estimation properly considered as part of plan formulation and confirmation. Is there a downside to that? Well, apologies, finality and whether or not you should reach the merits are always a matter of balancing considerations. This case needs to move forward. We don't need side detours and interruptions of the process that has now been going on in the bankruptcy court since she rendered this decision on how to go about estimation, and we're just about to launch into the actual discovery in that matter. But here's the essential point. In fact, that opinion is already two years old. It is, and we've covered a lot of ground since then. A lot of other decisions have been made that if you were to accept this one might tempt parties to try to appeal other interlocutory stages of the estimation proceeding. It's a complex, multi-phase matter, and there's only one way to winnow the issues and get down to really what really matters, and that's to go forward. Now, the decision that confronted Judge Gambardella was a highly discretionary one under this court's Bittner jurisdiction. The task is conforming to the applicable law that governs the claims. What is the best way to estimate them for the purposes of this case? G1 is wrong to suggest that the question of jury trial rights was the be-all and end-all of the matter. In fact, Judge Gambardella rejected their plan on a host of other grounds, most importantly rejecting their notion that she could delegate to a panel of special masters that it called the Claims Liquidation Committee to apply its metrics, make factual determinations, and in effect act as judicial officers when they were not. She correctly held that that was a violation of section 157b2b of the judicial code and ran square up against bankruptcy rule 9031, which forbids the use of If there can be no adjunct to the bankruptcy court or even the district court, which is also bound by rule 9031, to conduct this matrix, there can't be that. The court itself must do it. That's unlawful delegation of the judicial power. Then this specter of 150,000 jury trials in the bankruptcy case that G1 raises simply cannot happen. It isn't true because the court confronted with the nature of this case isn't going to liquidate the claims one by one, isn't required to under the Bittner jurisprudence, is entitled to take an alternative path to getting to plan confirmation. And if you if you notice at page 864 of the record, Judge Gambardella comes out and says, you know, fundamentally what G1 is proposing is just not the right way to go about the estimation for the purposes of this case. It would take too long. It would be too disputatious. The Claims Liquidation Committee would take a couple of years to get going. Then it would take a couple of years to get through the claims. I just don't think it's the right thing to do. Judge Bassler never passed on the merits of those subsidiary decisions that equally with the jury trial question form the basis of Judge Gambardella's rejection of the debtors program. And so it would be impromptu to say the least for this court to reach in, pluck the jury trial question from the entire complex that Judge Gambardella faced, answer that, and send it back. If you are not persuaded, as I think you should be, that her decision wasn't a final order for appeal, then it seems to me your only correct course of action is to remand to the district court with directions to entertain the appeal. Thank you very much. If you have no questions for you, I'll stand down. Thank you. Mr. Peenestad. Thank you, Your Honors. May it please the court. Judge Smith, the answer is Bankruptcy Judge Gambardella imposed a gigantic liability on this estate. That is the equivalent of an impact on the assets. It is undisputable Bankruptcy Judge Gambardella's own decision talks about the impact of jury trials. And as I said earlier, it doesn't mean there would be 150,000 jury trials held. It means that everyone negotiating would have that weapon to say, I'm going to cost you X thousand dollars in a jury trial unless you give me the settlement I want. Now, my adversary just admitted, you will not get to review this until confirmation. I want to point you, if it's not a final order and reviewed now, I want to refer you to page 0621 of the appendix. You don't have to look at it, but you can certainly. It's a letter I sent to Judge Gambardella waiving the immediate hearing on the bar date so that that would not hold up the other things she was doing. I'm mentioning it now because it proves entirely that my adversary is 100 percent wrong in saying that our motion was meant to get to the same relief as their motion, namely to add up the exact amounts of 150,000 claims and have the aggregate liability. If we wanted to do that, we would not have waived the bar date because you need the bar date to have everyone's claim parameters come in. So that is just I take heart. In fact, they continue to try to say that our motion is the same as their motion, just a different method. It's totally false. Page 621 proves it. And without that really fabricated confusion, our motion is standalone. It's critically important to how this case is resolved. Now, let's look at the other three factors, Your Honor. Preclusive effect. Judge Gambardella's ruling that there has to be a right to jury trial for each of hundreds of thousands of asbestos claims has a preclusive effect on the plan and confirmation. Judicial economy. It's not judicial economy if the whole case has to be done over. Currently, and this was only done a few weeks ago, Your Honor, Judge Gambardella set a date in 2008 for the estimation trial that they want to have. This can be reviewed and Judge Gambardella can know for the purposes of our motion how to liquidate individual claims and for their motion, the aggregate, whether there is a jury trial right she has to deal with. More fact-finding. No more fact-finding is required for our motion. There we had a motion to use a medical matrix. All of her objections were based on issues of law. The special master issue that Mr. Sweat brought up, as we pointed out, the district court can use magistrates. She had a few others. Each were tweaks that are easily fixed if they were errors to begin with, but all of them were legal points. The bankruptcy court's decision doesn't mention one issue that needs further fact-finding. So we satisfy the four factors. And downtile, which the other side grabs onto and Judge Bassler grabbed onto. It's just a district court decision. It doesn't bind us. I would say if it were persuasive, it might, but it doesn't apply here because it was just a question of timing. It would be persuasive. It still wouldn't bind us. Exactly, exactly. Your Honor, I'm done unless Your Honor has other questions. Thank you very much. This has been a very well-argued case from all sides and a very interesting question or questions. We thank counsel. We'll take the case under advisement. And at this point, we will take about a five-minute recess and then resume and hear argument in Steele v. Bowen. Thank you. Yeah. Yeah. I'll try hand-in-hand like this. Okay. You want that muted? Yeah. Yeah. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Thank you. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Before you 19 22 Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay.